IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 08-cv-00649-LTB-MEH

DAVID EARL ANTELOPE,

      Plaintiff,

v.

UNITED STATES OF AMERICA, and
DR. KELLAR,

      Defendants.

---

## RECOMMENDATION ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

---

      Pending before the Court is Defendants' Motion for Summary Judgment [filed September 1, 2010; docket #159]. The matter is referred to this Court for recommendation. (Docket #160.) The motion is fully briefed, and oral argument would not materially assist the Court in its adjudication. For the reasons set forth below, the Court **RECOMMENDS** Defendants' Motion for Summary Judgment be **GRANTED**.[1]

---

[1]Be advised that all parties shall have fourteen (14) days after service hereof to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned. Fed. R. Civ. P. 72. The party filing objections must specifically identify those findings or recommendations to which the objections are being made. The District Court need not consider frivolous, conclusive or general objections. A party's failure to file such written objections to proposed findings and recommendations contained in this report may bar the party from a de novo determination by the District Judge of the proposed findings and recommendations. *United States v. Raddatz*, 447 U.S. 667, 676-83 (1980); 28 U.S.C. § 636(b)(1). Additionally, the failure to file written objections to the proposed findings and recommendations within fourteen (14) days after being served with a copy may bar the aggrieved party from appealing the factual findings of the Magistrate Judge that are accepted or adopted by the District Court. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *In re Garcia*, 347 F. App'x 381, 382-83 (10th Cir. 2009).

# BACKGROUND

## I.     Procedural History

Plaintiff is an inmate in federal custody incarcerated at the Federal Correctional Institution in Petersburg, Virginia.  (*See* docket #142.)  The allegations giving rise to this lawsuit occurred at the commencement of Plaintiff's incarceration at the Federal Correctional Institution ("FCI") in Florence, Colorado.  (*See* docket #89.)  After a portion of his initial action, *pro se* filed on March 31, 2008, survived two motions to dismiss, Plaintiff submitted a Second Amended Complaint on March 27, 2009, limited to an Eighth Amendment claim alleging sufficient facts to state *Bivens* claims against Defendants Wilner, Polland, Kellar, and Bonfiglio and an injunctive relief claim against the United States.  (Docket #89.)  The Court then adjudicated a third partial motion to dismiss filed by these defendants, resulting in the dismissal of Defendants Wilner, Polland, and Bonfiglio.  (Docket #119.)

Defendants United States and Kellar remain.  Construing Plaintiff's Second Amended Complaint liberally, Plaintiff alleges Defendants violated the Eighth Amendment prohibition against cruel and unusual punishment through their failure to provide Plaintiff with care and treatment for Plaintiff's mental illness other than prescribing medications that cause negative side effects. (Docket #89 at 4-9.) Specifically, Plaintiff contends that, on March 15, 2007, at the FCI Florence "Receiving and Departure Unit," Defendant Kellar questioned Plaintiff regarding Plaintiff's reasons for refusing to take medications prescribed to him.  (*Id*. at 10.)  Plaintiff avers that Defendant Kellar told Plaintiff to "go kill himself," even though Defendant Kellar knew of Plaintiff's history of suicide attempts. (*Id*.)   As relief, Plaintiff requests mental health care and treatment needed "to stabilize his condition," transfer to a correctional facility "properly equiped (sic) and staffed to treat the plaintiff's existing infirmatives (sic)," compensatory and punitive damages, and costs and fees

related to his action. (*Id*. at 14.)

In their motion, Defendants assert that the Court should enter summary judgment in their favor for three reasons: 1) Plaintiff cannot meet his evidentiary burden establishing Defendant Kellar was present during the intake screening; 2) Plaintiff cannot meet his evidentiary burden establishing he received inadequate medical care at FCI Florence; and 3) Defendant Kellar is entitled to qualified immunity. (*See* docket #159.) Defendants briefly mention that the person who did screen Plaintiff upon his arrival to FCI Florence is entitled to immunity as a Public Health Service employee pursuant to 42 U.S.C. § 233(a). (*Id*. at 3.)

In response, Plaintiff contends Defendants had knowledge of his "life threatening mental illness." (Docket #162 at 2.) Plaintiff avers he suffers "irreparable permanent brain injury . . . as a result of . . . the complete error in the prescribing of his medication." (*Id*. at 4.) Plaintiff believes that because his affidavit and the evidence relied upon by Defendants in their motion are "squarely contradictory," a genuine issue regarding material facts exists, and summary judgment is inappropriate. (*Id*. at 6.) Plaintiff restates the factual representations in his Second Amended Complaint, namely that Defendant Kellar told Plaintiff, "go kill yourself," in response to Plaintiff's explanation for why he refused to take his prescribed medication. (*Id*. at 6-7.) Again, Plaintiff asserts this exchange took place during the March 15, 2007 intake process, when Plaintiff was transferred to FCI Florence. (*Id*. at 6.) Plaintiff further describes the medication that has been prescribed to him and the corresponding conditions and side effects. (*Id*. at 8-9.) In support of his response, Plaintiff included 1) a claim filed with the federal Bureau of Prisons, dated August 6, 2008, asserting the denial of psychiatric care; 2) Plaintiff's affidavit describing his mental illnesses; 3) a document describing the effects of Seroquel, a stated treatment for bipolar depression and 4) an unintelligible copy of what appears to be a news article.

In reply, Defendants restate the bases of their motion, asserting that Defendant Kellar, who is not a doctor, was not present during the intake screening and thus could not have told Plaintiff to "go kill himself." (Docket #163 at 3.) Defendants contend that Plaintiff's affidavit is self-serving and inadequate to defeat summary judgment. (*Id*.) Defendants describe how Plaintiff's medical records demonstrate the medical attention provided to him by Bureau of Prisons staff. (*Id*. at 5.) Defendants emphasize that Defendant Kellar is entitled to qualified immunity because Plaintiff has not alleged sufficient facts to show that Defendant Kellar violated his Eighth Amendment rights. (*Id*. at 6.)

Plaintiff filed a surreply on November 1, 2010, without first seeking permission from the Court. (Docket #164.) In light of the Court's obligation to liberally construe a *pro se* plaintiff's filings, the Court will review the surreply in making this recommendation. The surreply does little more than restate the arguments raised in Plaintiff's response. It appears to the Court that Plaintiff now attempts to allege supervisory liability against Defendant Kellar; however, such allegation is not included in the Second Amended Complaint. Plaintiff also complains about not receiving discovery; however, the Court stayed the discovery process pursuant to Supreme Court precedent dictating that discovery be stayed when qualified immunity is an asserted defense. Plaintiff, in essence, summarizes his claim as challenging the prescription of medication and the monitoring of Plaintiff's health condition by Defendant Kellar (or, as Defendants contend, some unnamed medical staff at FCI Florence).

For the reasons stated below and the entire record herein, the Court concludes that Defendants are entitled to summary judgment in their favor, and Plaintiff's Second Amended Complaint should be dismissed with prejudice in its entirety.

## II.     Statement of Undisputed Facts

The Court includes the following facts, in relevant part, from the statement proffered by Defendants.  Plaintiff made no discernable attempt to dispute these facts with anything other than conclusory statements reiterating the allegations in his Second Amended Complaint, thus the Court considers the statement undisputed.

1.    The events relating to the alleged Eighth Amendment claim against Defendants Kellar and the United States occurred while Plaintiff was incarcerated at FCI Florence.  (2d Am. Compl., docket #89.)

2.    Plaintiff arrived at FCI Florence on March 15, 2007.  (Declaration of Mark Kellar ("Kellar Decl."), Aug. 25, 2010, ¶ 10, docket #159-1; *see also* docket #159-2 at 2.)

3.    Upon arrival, Public Health Service ("PHS") Officer Patricia Mitchell, Commander, performed a medical intake screening on Plaintiff.  (Kellar Decl., ¶ 10-11.)

4.    Defendant Kellar is a registered nurse and is the Health Services Administrator at ADX. (Kellar Decl., ¶ 1-2.)

5.    Defendant Kellar was not involved in Plaintiff's March 15, 2007, medical intake screening. (Kellar Decl., ¶ 13; *see also* docket #168 (referring to Defendant Kellar's time and attendance records[2]).)

6.    Defendant Kellar has not had any personal dealings with Plaintiff except to sign a form on Plaintiff's departure from Florence, Colorado.  (Kellar Decl., ¶ 14.)

7.    Plaintiff has a history of mental illness and suicide attempts.  (Kellar Decl., ¶ 9; dockets ##159-4 and 159-5 (medical records).)

8.    Plaintiff has a well-documented history of refusing prescription medications.  (Keller Decl.,

_____

[2]The Court notes that Attachment 11 is blank.  (*See* docket #168-1.)

5

¶ 9; Declaration of Patricia Mitchell ("Mitchell Decl."), Aug. 31, 2010, ¶ 10, docket #159-9;

*see also* docket #159-10 (intake forms indicating refusal of medication).)

9.    From March 15, 2007, to August 25, 2009, Plaintiff was incarcerated at FCI Florence.

(Keller Decl., ¶ 7; *see also* docket #159-2 (inmate history).)

10.   Plaintiff is currently incarcerated at FCI Petersburg, VA, and under medical care at that

facility.  (*Id.*)

## STANDARD OF REVIEW

### I.    Fed. R. Civ. P. 56

Summary judgment serves the purpose of testing whether a trial is required.  *Heideman v.

South Salt Lake City*, 348 F.3d 1182, 1185 (10th Cir. 2003).  The Court shall grant summary

judgment if the pleadings, depositions, answers to interrogatories, admissions, or affidavits show

there is no genuine issue of material fact and the moving party is entitled to judgment as a matter

of law. Fed. R. Civ. P. 56(c).  A fact is material if it might affect the outcome of the suit under the

governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The moving

party bears the initial responsibility of providing to the Court the factual basis for its motion and

identifying the pleadings, depositions, answers to interrogatories, and admissions on file, together

with affidavits, if any, which reveal that there are no genuine issues as to any material facts, and that

the party is entitled to summary judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317,

323 (1986).  However, the non-moving party has the burden of showing that there are issues of

material fact to be determined.  *Id.* at 324.

If the movant properly supports a motion for summary judgment, the opposing party may

not rest on the allegations contained in his complaint, but must respond with specific facts showing

a genuine factual issue for trial.  Fed. R. Civ. P. 56(e); *Scott v. Harris*, 550 U.S. 372, 380 (2007)

("[t]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.") (emphasis in original) (citation omitted); *see also Hysten v. Burlington Northern & Santa Fe Ry.*, 296 F.3d 1177, 1180 (10th Cir. 2002). These specific facts may be shown "'by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves.'" *Pietrowski v. Town of Dibble*, 134 F.3d 1006, 1008 (10th Cir. 1998) (quoting *Celotex*, 477 U.S. at 324). "[T]he content of summary judgment evidence must be generally admissible and . . . if that evidence is presented in the form of an affidavit, the Rules of Civil Procedure specifically require a certain type of admissibility, *i.e.*, the evidence must be based on personal knowledge." *Bryant v. Farmers Ins. Exch.*, 432 F.3d 1114, 1122 (10th Cir. 2005). "The court views the record and draws all inferences in the light most favorable to the non-moving party." *Pepsi-Cola Bottling Co. of Pittsburg, Inc. v. Pepsico, Inc.*, 431 F.3d 1241, 1255 (10th Cir. 2005).

## II.    Treatment of a *Pro Se* Plaintiff's Pleadings

A federal court must construe a *pro se* plaintiff's "pleadings liberally, applying a less stringent standard than is applicable to pleadings filed by lawyers. [The] court, however, will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (quotations and citations omitted). In other words, "if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so despite the plaintiff's failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). But, it is not "the proper function of the district court to assume the role of advocate for the pro se litigant." *Id.*; *see also Peterson v. Shanks*, 149 F.3d 1140, 1143 (10th

Cir. 1998) (citing *Dunn v. White*, 880 F.2d 1188, 1197 (10th Cir. 1989)).

## ANALYSIS

The Defendants assert that Defendant Kellar is entitled to qualified immunity. Qualified immunity protects from litigation a public official whose possible violation of a plaintiff's civil rights was not clearly a violation at the time of the official's actions. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). It is an entitlement not to stand trial or face the other burdens of litigation. *Ahmad v. Furlong,* 435 F.3d 1196, 1198 (10th Cir. 2006) (internal quotations and citations omitted). The privilege is an immunity from suit rather than a mere defense to liability. *Id.* When a defendant asserts the defense of qualified immunity at summary judgment, the burden shifts to the plaintiff to overcome the asserted immunity. *Riggins v. Goodman*, 572 F.3d 1101, 1107 (10th Cir. 2009). "The plaintiff must demonstrate on the facts alleged both that the defendant violated his constitutional or statutory rights, and that the right was clearly established at the time of the alleged unlawful activity." *Id.* (citing *Pearson v. Callahan*, 555 U.S. 223, 129 S. Ct. 808, 818 (2009)).

The Supreme Court recently discarded a review process that required courts to examine these questions sequentially, first considering whether a right had been violated, and then second - if the court concluded a right had been violated - whether that right was clearly established at the time of the alleged violation. *Pearson,* 129 S. Ct. at 816-22. *Pearson* retired this process, instead affording courts the discretion to decide "which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Id.* at 818; *see also Christensen v. Park City Mun. Corp.*, 554 F.3d 1271, 1277 (10th Cir. 2009).

In determining whether Plaintiff has met his burden of establishing constitutional violations that were clearly established, the Court construes the facts in the light most favorable to him as the non-moving party. *Scott*, 550 U.S. at 378. At summary judgment, the litigation is beyond the

pleading phase; thus, a plaintiff's version of the facts must be supported by the record. *Thomson v. Salt Lake Cnty.*, 584 F.3d 1304, 1312 (10th Cir. 2009). That is, "as with any motion for summary judgment, when opposing parties tell two different stories, one of which is blatantly contradicted by the record so that no reasonable jury could believe it, a court should not adopt that version of the facts." *Id.* (citations and quotations omitted).

Consequently, the Court will examine first whether Plaintiff has demonstrated on supported facts that Defendant Kellar violated his Eighth Amendment rights. If the Plaintiff does so, the Court will then proceed to determine whether the right was clearly established at the time of the alleged conduct.

## I.      Personal Participation of Defendant Kellar

"In order to establish *Bivens* liability, a plaintiff is required to bring forth evidence that an individual defendant directly and personally participated in the purported constitutional violation." *Persaud v. Doe*, 213 F. App'x 740, 743 (10th Cir. 2007). "A plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution," because the theories of respondeat superior and vicarious liability are inapplicable to both *Bivens* and Section 1983 suits. *Aschcroft v. Iqbal*, 129 S. Ct. 1937, 1948 (2009).

Here, Plaintiff does not meet his burden of bringing forth evidence that Defendant Kellar directly and personally participated in the alleged constitutional violation. Defendant Keller represents under oath that he did not conduct the medical intake screening of Plaintiff on March 15, 2007, nor has he ever personally dealt with Plaintiff. (Kellar Decl., docket #159-1, ¶ 13-14.) Defendant Keller states that prison records show that the medical intake screening of Plaintiff was conducted by Public Health Services Officer Patricia Mitchell. (*Id*. at ¶ 11.) Plaintiff presents no evidence to the contrary.

Plaintiff's conclusory assertions that Defendant Kellar is liable under the theory of supervisory liability also fails pursuant to *Iqbal*.  In *Dodds v. Richardson*, 614 F.3d 1185 (10th Cir. 2010), the Tenth Circuit recognized that the *Iqbal* Court further narrowed the already limited theory of supervisory liability.  The *Dodds* court explained *Iqbal*'s holding that "when a plaintiff sues an official under *Bivens* or § 1983 for conduct 'arising from his or her superintendent responsibilities,' the plaintiff must plausibly plead and eventually prove not only that the official's subordinates violated the Constitution, but that the official by virtue of his own conduct and state of mind did so as well."  *Dodds*, 614 F.3d at 1198 (quoting *Iqbal*, 129 S. Ct. at 1949).

Plaintiff's asserted facts regarding Defendant Kellar's participation in the alleged constitutional violation are not supported by the record, and Plaintiff's story is blatantly contradicted by Defendants' presented evidence.  Therefore, the Court finds that Defendant Kellar is entitled to qualified immunity, as Plaintiff does not (and, in consideration of Defendants' evidence, cannot) demonstrate on supported facts that Defendant Kellar violated Plaintiff's Eighth Amendment rights.  The Court recommends that Defendants' Motion for Summary Judgment be granted in favor of Defendant Kellar.

## II.     Public Health Service Immunity

In the interests of judicial efficiency and a thorough analysis, the Court will briefly address the potential liability of Commander Mitchell.  Commander Mitchell attests that she conducted the medical evaluation of Plaintiff upon his arrival at FCI Florence on March 15, 2007.  (Mitchell Decl., docket #159-9, ¶ 10.)  Regarding the statement alleged by Plaintiff, "go kill yourself," Commander Mitchell represents that she does not recall such a statement being made.  (*Id*. at ¶ 11.)  Commander Mitchell further asserts that, as a commissioned officer with the Public Health Service, she is entitled to immunity "from suit in a *Bivens* action if the injury for which compensation is sought

resulted from the performance of a medical or related function while acting within the scope" of her employment, pursuant to 42 U.S.C. § 233(a).  (*Id*. at ¶ 1, 3.)

Section 233(a) of 42 U.S.C. "makes the United States the exclusive defendant for injuries that employees of the Public Health Service cause while acting within the scope of their employment." *Lurch v. United States*, 719 F.2d 333, 340 n.10 (10th Cir. 1983).  Section 233(a) specifies the Federal Tort Claims Act ("FTCA") as the exclusive remedy for such claims. *Cuoco v. Moritsugu*, 222 F.3d 99, 107 (2d Cir. 2000).

Here, the Court determines a potential claim against Commander Mitchell (via the United States) fails for two reasons.  First, Plaintiff again does not provide any indication other than what is stated in his pleadings and his own affidavit that he was denied medical care in violation of the Eighth Amendment.[3]  A "conclusory and self-serving" affidavit is insufficient to create a factual dispute. *Hall*, 935 F.2d at 1111.  Second, the Court has already stated that any assertion of malpractice under the FTCA exceeds the scope of the Court's permission in granting Plaintiff leave to amend.  (Docket #114 at 5; *see also* docket #119.)  Therefore, the Court concludes that a potential liability claim against Commander Mitchell does not resuscitate Plaintiff's Second Amended

---

[3]Plaintiff provides a somewhat extensive narrative of the medical care he has received while in federal custody.  As the Court explained in previous recommendations and orders, a prisoner's difference of opinion with the prison's medical staff does not rise to the level of a constitutional violation. *Johnson v. Stephan*, 6 F.3d 691, 692 (10th Cir. 1993); *Coppinger v. Townsend*, 398 F.2d 392, 394 (10th Cir. 1968) (stating "a difference of opinion between a physician and a patient does not give rise to a constitutional right or sustain a claim under § 1983").  The Tenth Circuit determined "a prison doctor remains free to exercise his or her independent professional judgment and an inmate is not entitled to any particular course of treatment." *Callahan v. Poppell*, 471 F.3d 1155, 1160 (10th Cir. 2006) (quoting *Snipes v. DeTella*, 95 F.3d 586, 591 (7th Cir. 1996)). *See also Worrell v. Bruce*, 296 F. App'x 665, 670 (10th Cir. 2008) (holding the same for decision of a prison nurse).  Decisions such as a preferred course of treatment are based on medical judgment and are outside of the Eighth Amendment's scope. *Callahan*, 471 F.3d at 1160 (quoting *Estelle v. Gamble*, 429 U.S. 97, 107 (1976)).  Additionally, "medical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Estelle*, 429 U.S. at 106.

Complaint.

## III.    Defendant United States

The Court permitted Plaintiff to file the Second Amended Complaint including the United States as a defendant for purposes of his request for injunctive relief.  (Docket #81 at 16; *see also* docket #85)  The Court premised this permission on its conclusion that Plaintiff had, at that stage of the litigation, stated a cognizable Eighth Amendment violation.  Now, after the adjudication of an additional partial motion to dismiss and the motion for summary judgment as stated herein, the Court finds that Plaintiff's remaining claim does not withstand the evidence presented by Defendants, thus there is no longer a basis for the injunctive relief requested.  Therefore, the United States is no longer a proper party to this proceeding, and the Court recommends summary judgment be entered in its favor.

## <u>CONCLUSION</u>

Accordingly, for the reasons stated above and the entire record herein, the Court **RECOMMENDS** Defendants' Motion for Summary Judgment [filed September 1, 2010; docket #159] be **GRANTED** and Plaintiff's Second Amended Complaint be **dismissed with prejudice** in its entirety.

Dated at Denver, Colorado, this 21st day of March, 2011.

BY THE COURT:

*Michael E. Hegarty*

Michael E. Hegarty
United States Magistrate Judge

12